1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

12

13

14

15

16

17

18

| | |
|---|---|
| WINSTON R. ANDERSON, CHRISTOPHER M. SULYMA, and all others similarly situated,<br><br>         Plaintiffs,<br><br>   v.<br><br>INTEL CORPORATION INVESTMENT POLICY COMMITTEE, et al.,<br><br>         Defendants. | Case No. 19-CV-04618-LHK<br><br>**ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS COUNTS I-VI OF PLAINTIFFS' CONSOLIDATED COMPLAINT** |

19

20

21

22

23

24

     Plaintiffs Winston Anderson and Christopher Sulyma (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this action against twenty-one named individual Defendants and three committees of the Intel Corporation, Inc. (collectively, "Defendants"), alleging violations of the Employee Retirement Income Security Act ("ERISA"). Before the Court is Defendants' Motion to Dismiss Counts I–VI of Plaintiffs' Consolidated Complaint, ECF No. 99 ("Mot.").[1]  Having considered the parties' briefing, the relevant law, and

25

26

27

---

[1] Defendants' motion to dismiss contains a notice of motion paginated separately from the supporting points and authorities.  ECF No. 99 at i.  Civil Local Rule 7-2(b) provides that the notice of motion and points and authorities must be contained in one document with the same

28

1

1    the record in this case, the Court GRANTS with leave to amend Defendants' Motion to Dismiss

2    Counts I-VI of Plaintiffs' Consolidated Complaint.

3    **I.      BACKGROUND**

4       **A.   Factual Background**

5          **1.   The Parties**

6            Plaintiff Anderson is a former employee of the Intel Corporation, where he worked from

7    2000 to 2015.  Consolidated Complaint, ECF No. 95, at ¶ 19 ("Compl.").  As a result of his

8    employment with Intel, Anderson participated in the Intel 401(k) Savings Plan and the Intel

9    Retirement Contribution Plan (collectively, "the Intel Plans").  *Id.*  Plaintiff Sulyma is a former

10   employee of the Intel Corporation, where he worked from June 2010 to September 2012.  *Id.* at ¶

11   20.  As a result of his employment with Intel, Sulyma also participated in the Intel Plans.  *Id.*

12          Plaintiffs name as Defendants the Intel Corporation Investment Policy Committee ("the

13   Investment Committee") and its members,[2] the Intel Retirement Plans Administrative Committee

14   ("the Administrative Committee") and its members,[3] the Finance Committee of the Intel

15   Corporation Board of Directors ("the Finance Committee") and its members,[4] and the Chief

16   Financial Officers of the Intel Corporation ("the Chief Financial Officers").[56]  *Id.* at ¶¶ 21–44.

17   Prior to January 1, 2018, the "Investment Committee Defendants had the authority, discretion, and

18   responsibility to select, monitor, and remove or replace investment options in the 401(k) Savings

19

20   _____
     pagination.
21   [2] Plaintiffs have named as Defendants individual members of the Investment Committee.  Those
     Defendants are Christopher Geczy, Ravi Jacob, David Pottruck, Arvind Sodhani, and Richard
22   Taylor.  *Id.* at ¶¶ 22–26.
     [3] Plaintiffs have named as Defendants individual members of the Administrative Committee.
23   Those Defendants are Terra Castaldi, Ronald Dickel, Tiffany Doon Silva, Tami Graham, Cary
     Klafter, and Stuart Odell.  *Id.* at ¶¶ 29–34.
24   [4] Plaintiffs have named as Defendants individual members of the Finance Committee.  Those
     Defendants are Charlene Barshefsky, Susan Decker, John Donahoe, Reed Hundt, James Plummer,
25   and Frank Yeary.  *Id.* at ¶¶ 37–42.
     [5] Plaintiffs have named as Defendants individual Chief Financial Officers.  Those Defendants are
26   Stacy Smith, Robert Swan, Todd Underwood, and George Davis.  *Id.* at ¶¶ 45–48.
     [6] Plaintiffs also name the Intel 401(k) Savings Plan and the Intel Retirement Contribution Plan as
27   nominal Defendants.  *Id.* at ¶¶ 50, 51.

                                                    2
28   Case No. 19-CV-04618-LHK
     ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS COUNTS I-VI OF
     PLAINTIFFS' CONSOLIDATED COMPLANT

United States District Court
Northern District of California

Plan and the Retirement Contribution Plan." *Id.* at ¶ 130. Allegedly, as of January 1, 2018, Global Trust Company was appointed by the Investment Committee to serve as trustee for the Intel Plans. *Id.* at ¶ 5. The Investment Committee and Administrative Committee are named fiduciaries of the Intel Plans. *Id.* at ¶¶ 21, 28.

### 2. The Intel Plans

According to Plaintiffs, both of the Intel Plans are "employee pension benefit plan[s]" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and "defined contribution plan[s]" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34). Both Intel Plans are maintained and sponsored by Intel. Compl. at ¶ 50, 51. All Intel employees who become eligible to participate in the 401(k) Savings Plan are automatically enrolled in it pursuant to Section 3(a) of the Plan. However, eligible employees may make an affirmative election not to participate. *Id.* at ¶ 75. Benefits under the 401(k) Saving Plan are funded by the tax-deferred contributions of participants and any discretionary contributions made by Intel. *Id.* at ¶ 76. Before January 1, 2011, Intel employees were automatically enrolled in the Intel Retirement Contribution Plan when they became eligible to participate. *Id.* at ¶ 86. However, after January 1, 2011, employees hired on or after January 1, 2011 are no longer eligible to participate in the Retirement Contribution Plan. *Id.* The Retirement Contribution Plan is funded by discretionary contributions by Intel. *Id.* at ¶ 87.

Participants in the 401(k) Savings Plan may direct the investment of their individual account balances into the investment options of their choice offered by the Plan. *Id.* at ¶ 80. Before January 1, 2015, participants in the Retirement Contribution Plan under the age of 50 were not allowed to direct the investment of Intel's contributions on their own behalf, and investment decisions were made by the Investment Committee. *Id.* at ¶ 92. Participants over the age of 50 had some discretion in directing the investment of Intel's contributions. *Id.* at ¶ 91. After January 1, 2015, the Retirement Contribution Plan was amended to allow participants to direct their investments into any of the investment options made available under the Plan. *Id.* at ¶ 94.

Case No. 19-CV-04618-LHK
ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS COUNTS I-VI OF PLAINTIFFS' CONSOLIDATED COMPLANT

United States District Court
Northern District of California

Plaintiffs allege that the Investment Committee designed and implemented two retirement investment strategies.  The first, the Target Date Funds ("TDFs"), use a dynamic allocation model, whereby the allocation to asset classes within the fund changes over time.  *Id.* at ¶ 2.  These funds hold a mix of asset classes that include "stocks, bonds, and cash equivalents," which are "readjusted to become more conservative over the time horizon of the fund," as the fund approaches the target date.  *Id.* at ¶ 185.  TDFs "are generally offered as a suite of 'vintages' in five-year or ten-year intervals where the vintage refers to the date of the fund such as a 2045." *Id.* at ¶ 7.  This date indicates that the fund is intended for participants who will reach normal retirement age (i.e., 65) around that given year.  Thus, the Intel TDF 2045 is intended for participants who will reach normal retirement age around 2045.  Allegedly, the TDFs are the "default investment alternative" in the 401(k) Savings Plan, which means that unless a participant makes an alternative election, participants are defaulted into the TDF.  *Id.* at ¶ 9.  The second investment strategy, the Global Diversified Fund ("GDF"), is a multi-asset portfolio with a fixed allocation model.  *Id.*  The Intel GDF is the default investment option of the Intel Retirement Contribution Plan, which means that unless a participant makes an alternative election, they are defaulted into the GDF.  *Id.* at ¶ 96.

### 3.  The Investment Committee's Conduct

Plaintiffs allege that after the financial crisis of 2008, when many equity-heavy funds suffered heavy losses, the Investment Committee redesigned the Intel Funds to include not only stocks and bonds, but also other asset classes like hedge funds and private equity.  *Id.* at ¶¶ 125, 265.  Plaintiffs allege that beginning in 2011, the Investment Committee began to dramatically increase the GDF's investment in private equity, hedge funds, and commodities (collectively, "Non-Traditional Investments").  *Id.* at ¶ 125.  Specifically, at the end of 2008, the Intel GDF held approximately 6.17% of its assets in private equity, hedge funds, and commodities, whereas by the end of 2013, the Intel GDF held approximately 36.71% of its assets in private equity, hedge funds, and commodities.  *Id.* at ¶ 125.  Plaintiffs allege that the Investment Committee also began to

4

United States District Court
Northern District of California

allocate an increased percentage of the TDFs' assets to hedge funds and commodities, including approximately 23% in 2011.  *Id.* at ¶ 127.  Plaintiffs further allege that this strategy continued in the following years, such that by September of 2015, Intel TDFs in the Intel 401(k) Savings Plan had between 27.46 % and 37.2% of the funds' assets in Non-Traditional Investments.  *Id.* at ¶ 169.  Similarly, as of September 2015, 56.22% of the assets of the Intel GDF in Intel's 401(k) Savings Plan were allocated to funds that invested in Non-Traditional Investments.  *Id.* at ¶ 171.  Plaintiffs allege that this allocation strategy continued in place through March of 2017.  *Id.* at ¶ 172.

Plaintiffs allege that although the Investment Committee pursued its investment in Non-Traditional Investments as a risk-mitigation strategy to diversify the portfolio of investments held by the Intel Funds, the Intel Funds performed significantly worse than comparable funds and accrued higher-than-average fees as a result of the Funds' investments.  *Id.* at ¶¶ 174–75.  Specifically, Plaintiffs allege that "[i]n pursuing a purported risk-mitigation strategy, the Intel Funds gave up the long-term benefit of investing in equity, which delivers superior returns."  *Id.* at ¶ 175.  Plaintiffs also allege that hedge funds and private equity funds charge fees that are higher than comparable investments.  *See, e.g., id.* at ¶¶ 222, 239.

Plaintiffs further argue that the strategy of allocating significant proportions of the Intel Funds' assets to Non-Traditional Investments deviated from prevailing professional asset manager standards of investment.  *Id.* at ¶ 180.  Specifically, Plaintiffs allege that peer TDFs allocate almost no assets to investments in hedge funds or private equity funds, and that funds comparable to the Intel GDFs allocate almost no assets to hedge funds or private equity funds.  *Id.* at ¶¶ 183, 190.  Plaintiffs allege that the Intel 401(k) Savings Plan disclosure documents hide the true nature of the Intel Funds' investment in Non-Traditional Investments, and were silent as to the risks associated with these investments.  *Id.* at ¶ 249.  Plaintiffs further allege that the Administrative Committee failed to properly disclose to plan participants the risks associated with investing in hedge funds and private equity funds.  *Id.* at ¶ 297.

Finally, Plaintiffs allege the Investment Committee made investments in Non-Traditional

Investments to benefit Intel and the Intel Capital Corporation ("Intel Capital"). *Id.* at ¶ 255. Intel Capital, Intel's venture capital division and an Intel subsidiary, partners with investment companies to invest in startups in a variety of sectors. *Id.* at ¶ 53, 256. Plaintiffs allege that the Investment Committee invested Intel Funds' assets in private equity funds established by some of the investment companies, such as Blackrock, General Atlantic, and Goldman Sachs, which invest in the same startups as Intel Capital. *Id.* at ¶ 255. Two Investment Committee Defendants, Arvind Sodhani and Ravi Jacob, also served in management roles at Intel Capital. *Id.* at ¶ 258. Plaintiffs allege that by investing in "numerous investments provided by investment companies that Intel Capital partnered with, the Investment Committee . . . helped Intel Capital develop and maintain a profitable network of investment companies that could provide Intel Capital and Intel with access to new technology startups." *Id.* at ¶ 258.

Plaintiffs now bring the instant action on behalf of a proposed class consisting of "[a]ll participants in the Intel Retirement Contribution Plan and the Intel 401(k) Savings Plan, whose accounts were invested in any one of the Intel Target Date Funds, the Intel Global Diversified Fund, or the Intel 401K Global Diversified Fund at any time on or after October 29, 2009." *Id.* at ¶ 54.

**B. Procedural Background**

On August 9, 2019, Anderson filed a complaint in the instant case against Defendants. ECF No. 1. On October 16, 2019, the Court granted a stipulation to stay the case pending the United States Supreme Court's decision in a related case, *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, No. 18-1116. ECF No. 65. *Sulyma* had previously been consolidated with *Lo v. Intel Corp.*, No. 16-CV-00522. *See* ECF No. 77, at 7. After *Sulyma* was consolidated with *Lo*, defendants moved to dismiss Sulyma's amended complaint. United States Magistrate Judge Nathanael Cousins converted defendants' motion into one for summary judgment on the statute of limitations question before the court, and ruled in favor of defendants. *See Sulyma v. Intel Corp. Inv. Pol'y Comm., et al.,* 19-CV-04618, ECF No. 145. The Ninth Circuit reversed. *See Sulyma v. Intel*

6

United States District Court
Northern District of California

*Corp. Inv. Pol'y Comm.*, 909 F.3d 1069, 1072 (9th Cir. 2018).  The Supreme Court affirmed the Ninth Circuit and remanded the case.  140 S. Ct. 768 (2020).  On May 7, 2020, Plaintiff filed a motion to consolidate this case with *Sulyma v. Intel Corp. Inv. Policy Comm.*, No. 17-CV-04977-NC.  ECF No. 77.  Defendants filed a response on May 21, 2020.  ECF No. 88.  On May 27, 2020, the Court granted Plaintiff's motion to consolidate the cases.  ECF No. 91.  On June 5, 2020, the Court entered an order adopting a case schedule and lifting the stay.  ECF No. 92.  On June 24, 2020, Plaintiffs filed a consolidated complaint.  ECF No. 95 ("Compl.").  On July 22, 2020, Defendants filed a motion to dismiss.  ECF No. 99 ("Mot.").  Defendants concurrently filed a request for judicial notice.  ECF No. 100.  On August 19, 2020, Plaintiffs filed an opposition to Plaintiffs' motion to dismiss.  ECF No. 101 ("Opp.").  Plaintiffs concurrently filed a request for judicial notice.  ECF No. 102.  Plaintiffs also filed an opposition to Defendants' request for judicial notice.  ECF No. 103.  On September 2, 2020, Defendants filed a reply.  ECF No. 104 ("Reply").

### C.  Requests for Judicial Notice

In connection with their motion to dismiss, Defendants request judicial notice of 17 documents, which include (1) Intel's 2013 Summary Plan Description ("Exhibit 1"); Intel's 2015 Summary Plan Description ("Exhibit 2"); Intel's 401(k) Savings Plan Investment Policy Statement as of January 12, 2017 ("Exhibit 3"); Global Diversified Fund Fact Sheet as of December 31, 2011 ("Exhibit 4"); Global Diversified Fund Fact Sheet as of September 30, 2015 ("Exhibit 5"); Global Diversified Fund Fact Sheet as of December 31, 2017 ("Exhibit 6"); Target Date 2045 Fund Fact Sheet as of December 31, 2011 ("Exhibit 7"); Target Date 2035 Fund Fact Sheet as of September 30, 2015 ("Exhibit 8"); Target Date 2015 Fund Fact Sheet as of September 30, 2015 ("Exhibit 9"); Target Date 2035 Fund Fact Sheet as of December 31, 2017 ("Exhibit 10"); excerpt of the Opening Brief of Plaintiff-Appellant Christopher Sulyma in *Sulyma v. Intel Corporation Investment Policy Committee, et. al.*, No. 17-15864, Dkt. No. 16 (9th Cir. 2018) ("Exhibit 11"); "Plans Face Challenges When Investing in Hedge Funds and Private Equity" ("Exhibit 12");

Case No. 19-CV-04618-LHK
ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS COUNTS I-VI OF
PLAINTIFFS' CONSOLIDATED COMPLANT

United States District Court
Northern District of California

1    Letter from Louis J. Campagna, Chief of the Division of Fiduciary Interpretations within the

2    Employee Benefits Security Administration's Office of Regulations and Interpretations ("Exhibit

3    13"); "Target Date Retirement Funds—Tips for ERISA Plan Fiduciaries" ("Exhibit 14"); "Intel

4    Custom Target-Date Evolution" ("Exhibit 15"); "Morningstar 2018 Target-Date Fund Landscape"

5    ("Exhibit 16"); T. Rowe Price Retirement 2015 Fund Fact Sheet ("Exhibit 17").  Request for

6    Judicial Notice, ECF No. 100, at 1–280 ("RJN").

7         The Court may take judicial notice of matters that are either "generally known within the

8    trial court's territorial jurisdiction" or "can be accurately and readily determined from sources

9    whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Moreover, courts may

10   consider materials referenced in the complaint under the incorporation by reference doctrine, even

11   if a plaintiff failed to attach those materials to the complaint.  *Knievel v. ESPN*, 393 F.3d 1068,

12   1076 (9th Cir. 2005).  Public records, including judgments and other publicly filed documents, are

13   proper subjects of judicial notice.  *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir.

14   2007).  However, to the extent any facts in documents subject to judicial notice are subject to

15   reasonable dispute, the Court will not take judicial notice of those facts.  *See Lee v. City of Los*

16   *Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of*

17   *Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

18        Defendants argue that Exhibits 1-10, 12, 15, and 16 are properly incorporated by reference

19   in Plaintiffs' complaint because they form the basis for Plaintiffs' claims and are referenced

20   throughout the complaint.  RJN, at 2-5.  Defendants argue that Exhibits 11, 13, 14, and 17 are

21   properly subject to judicial notice because they are court filings, government documents, and a

22   publicly available investor sheet.  *Id.*  In response, Plaintiffs agree that these documents can be

23   considered for limited purposes under the incorporation by reference doctrine and the doctrine of

24   judicial notice, but argue that Defendants "attempt improperly to use statements in those

25   documents as if they are presumptively true or accurate."  Plaintiffs' Opposition to Defendants'

26   Request for Judicial Notice, ECF No. 103, at 1.  For this reason, Plaintiffs argue that the Court

8

should deny Defendants' request for judicial notice.

The Court agrees that Exhibits 1-10, 12, 15, and 16 are properly incorporated by reference, and that Exhibits 11, 13, 14, and 17 are proper subjects of judicial notice. The Court therefore GRANTS Defendants' request for judicial notice. However, the Court notes again that to the extent any facts in documents subject to judicial notice are subject to reasonable dispute, the Court does not take judicial notice of those facts. *See Lee*, 250 F.3d at 689.

In connection with their opposition to the motion to dismiss, Plaintiffs request judicial notice of one document, an excerpt of the filed version of the Brief of Plaintiff-Appellant Christopher Sulyma in *Sulyma v. Intel Corporation Investment Policy Committee, et. al.*, No. 17-15864 (9th Cir. 2018). Request for Judicial Notice, ECF No. 102-2 ("Exhibit A"). Defendants do not oppose this request. As a court filing and matter of public record, the Court finds that this document is the proper subject of judicial notice. The Court therefore GRANTS Plaintiffs' request for judicial notice.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, a court need not accept as true allegations contradicted by judicially noticeable facts. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Mere "conclusory allegations

Case No. 19-CV-04618-LHK
ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS COUNTS I-VI OF PLAINTIFFS' CONSOLIDATED COMPLANT

*United States District Court*
*Northern District of California*

of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## III.   DISCUSSION

Plaintiffs allege six causes of action on behalf of themselves and participants in the Intel Plans, including: (1) breaches of duty under ERISA § 404(a) by the Investment Committee in selecting and monitoring the investments in the Intel Plans; (2) breaches of duty under ERISA § 404(a) by the Investment Committee in managing the assets of the Intel Plans, including failure to monitor and evaluate the asset allocation in the Intel Funds; (3) breaches of duty under ERISA §§ 404(a)(1)(A) and 404(a)(1)(B) by the Administrative Committee for failing to provide material and accurate disclosures to plan participants; (4) breaches of duty under ERISA § 404(a) by the Finance Committee and Chief Financial Officers for failure to monitor the Investment Committee; (5) violation of ERISA § 102(a) by the Administrative Committee for issuing Summary Plan Descriptions that failed to properly disclose and explain risks associated with the asset allocations in the Intel Funds; (6) co-fiduciary liability under ERISA § 405 against all Defendants.  Compl. at ¶¶ 319–384.  Defendants challenge each of these causes of action in the motion to dismiss. Plaintiff Anderson also alleges a seventh cause of action on behalf of himself only, which alleges a violation of § 104(b)(4) by the Administrative Committee for improper delay in the provision of certain documents.  *Id.* at ¶¶ 385–390.  Defendants deny liability, but do not challenge this claim in their motion to dismiss.  Mot. at 2.

### A.  Counts I and II: Breaches of Fiduciary Duty Under ERISA § 404(a)

Plaintiffs first allege that the Investment Committee committed various breaches of duty under ERISA § 404(a).  Under ERISA, plan fiduciaries are required to act in accordance with the duty of prudence, duty of loyalty, duty to diversify investments, and duty to act in accordance with the documents governing the plan.  29 U.S.C. § 1104(a)(1).  Here, Plaintiffs allege in Counts I and II that Defendants breached the first and second of these duties.  The Court first addresses whether Plaintiffs have stated a claim for breach of the duty of prudence.  The Court then turns to whether

Case No. 19-CV-04618-LHK
ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS COUNTS I-VI OF
PLAINTIFFS' CONSOLIDATED COMPLANT

United States District Court
Northern District of California

Plaintiffs have stated a claim for breach of the duty of loyalty.

### 1. Breach of the Duty of Prudence

ERISA requires that plan fiduciaries exercise "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B). Under this standard, the Court must determine "whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *Donovan v. Mazzola*, 716 F.2d 1226, 1232 (9th Cir. 1983); *see also White v. Chevron Corp.* ("*White II*"), 2017 WL 2352137, at *4 (N.D. Cal. May 31, 2017) (same). This duty extends to not only the initial selection of investments, but also to the continuous monitoring of investments, and requires that imprudent investments be removed. *See Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828 (2015). Importantly, this standard "focus[es] on a fiduciary's conduct in arriving at an investment decision, not on its results, and ask[s] whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *Pension Benefit Guar. Corp. ex rel. St. Vincent v. Morgan Stanley Inv. Mgmt.* ("*St. Vincent*"), 712 F.3d 705, 716 (2nd Cir. 2013). Thus, "[p]oor performance, standing alone, is not sufficient to create a reasonable inference that plan fiduciaries failed to conduct an adequate investigation . . . ERISA requires a plaintiff to plead some other indicia of imprudence." *White II*, 2017 WL 2352137, at *20; *see also Dorman v. Charles Schwab Corp.*, 2019 WL 580785, at *6 (N.D. Cal. Feb. 8, 2019) (same).

Plaintiffs allege that the Investment Committee breached its duty of prudence by adopting an asset allocation model for the Intel Plans that excessively allocated assets to Non-Traditional Investments, despite the higher fees incurred by those investments and the risks associated with investing in Non-Traditional Investments. Compl. at ¶¶ 324, 335. Plaintiffs further allege that the Investment Committee breached its duty of prudence by failing to properly monitor and regularly evaluate the asset allocation to Non-Traditional Investments, and to remove any imprudent

11

investments.  *Id.*

The Court notes at the outset that Plaintiffs do not attempt to support their imprudence claim with allegations regarding the knowledge, methods, or investigations made by the Investment Committee at the time the Investment Committee made the challenged investments. This omission on its own is not fatal to a claim for breach of the duty of prudence because "a claim alleging a breach of fiduciary duty may still survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed." *St. Vincent*, 712 F.3d at 718 (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009) (internal quotation marks omitted)).  However, the Court must be especially cautious in this context to "not rely on the vantage point of hindsight" when assessing the prudence of the plan fiduciaries' conduct.  *Id.* (internal citation and quotation marks omitted).

Plaintiffs argue that their complaint alleges facts sufficient to create a reasonable inference of imprudence under this standard.  Opp. at 12–13.  Defendants, in turn, argue that Plaintiffs have failed to state a claim for breach of the duty of prudence under ERISA § 404(a) for four main reasons: (1) Plaintiffs fail to allege that any actual investments held by the Intel Funds were imprudent, and Plaintiffs instead rely on general allegations regarding "non-traditional" assets; (2) Plaintiffs' attempt to demonstrate imprudence through *post hoc* comparisons to other asset classes fails to state a claim as a matter of law; (3) the allegedly excessive fees that Plaintiffs identify are within the range that the Ninth Circuit has deemed as acceptable in this context; and (4) Plaintiffs have failed to plausibly allege that the Investment Committee invested in Non-Traditional Investments for self-interested reasons.  Mot. at 7, 20.  The Court addresses Defendants' first argument, and then turns to the plausibility of Plaintiffs' allegations considered as a whole.

Defendants first argue that Plaintiffs have failed to state a claim for imprudence because Plaintiffs fail to challenge the actual investments held by the Intel Funds, and instead attack "non-traditional" assets such as hedge funds or private equity funds as *per se* imprudent.  Mot. at 8–10. Defendants allege that "[a]lthough Plaintiffs know the identities of both the public and private

Case No. 19-CV-04618-LHK
ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS COUNTS I-VI OF PLAINTIFFS' CONSOLIDATED COMPLANT

United States District Court
Northern District of California

investments held by the Intel Funds, Plaintiffs studiously avoid asserting that any specific investment was imprudent." Mot. at 8.  As a result, Defendants argue, Plaintiffs are forced to attack only the generic risks of hedge funds and private equity as a class of investments, and Plaintiffs' complaint alleges no more than "imprudence by association," which is insufficient to state a claim as a matter of law. *Id.*

In response, Plaintiffs acknowledge that they have not alleged that any specific investment in a hedge fund or private equity fund made by the Investment Committee was imprudent. Instead, Plaintiffs challenge the asset allocation level of Non-Traditional Investments within the Intel Funds as imprudent, rather than any particular investment on its own.  Opp. at 9.  Plaintiffs argue that allocating a significant percentage of the Intel Funds' assets to Non-Traditional Investments in hedge funds and private equity, rather than equities or bonds, is itself a breach of the duty of prudence under ERISA.  Plaintiffs cite three cases that Plaintiffs allege support the proposition that a plaintiff may challenge the asset allocation of a plan as imprudent, rather than any particular investment. *Id.*; *Stegemann v. Gannett Co., Inc.*, 970 F.3d 465, 470 (4th Cir. 2020) (finding that plaintiff stated a cognizable claim for breach of the duty of prudence based on allegations of concentration of plan assets in problematic single-stock fund); *St. Vincent*, 712 F.3d at 724 (holding that although failure to diversify may give rise to a claim for breach of fiduciary duty, plaintiff failed to state a claim on the facts alleged); and *Olsen v. Hegarty*, 180 F. Supp. 2d 552, 567 (D.N.J. 2001) (plaintiff stated a claim for breach of fiduciary duty for failure to diversify by alleging concentration of investment in one asset).

Defendants respond, and the Court agrees, that in these cases plaintiffs alleged a claim under ERISA § 404(a)(1)(C)'s diversification requirement, and Plaintiffs have not pled a § 404(a)(1)(C) claim in this case.  However, the Court agrees with Plaintiffs that Defendants have failed to cite any authority that holds that the level of an asset within a plan cannot give rise to a claim for breach of fiduciary duty.  Nevertheless, Plaintiffs are still required to allege specific facts to support a cognizable claim that the Investment Committee's decision to allocate a particular

United States District Court
Northern District of California

United States District Court
Northern District of California

percentage of the Intel Plans' assets to hedge fund and private equity investments was imprudent at the time that decision was made.

Plaintiffs allege that they have made such a showing by alleging that (1) the Non-Traditional Investments in the Intel Plans underperformed comparable investments; (2) the Non-Traditional Investments charged fees that were significantly higher than comparable investments; (3) the Investment Committee's decision to allocate assets to Non-Traditional Investments was a significant departure from the prevailing norm of comparable asset managers at the time the investments were made; (4) contemporary evidence at the time the investments were made demonstrated that Non-Traditional Investments did not perform the risk-mitigation function that Defendants claim they were intended to serve and carried significant risks; and (5) Defendants invested in Non-Traditional Investments to benefit Intel Capital and Intel, rather than plan participants. Opp. at 12–13. Plaintiffs concede that their imprudence claim cannot survive on the basis of any one of these allegations alone, but Plaintiffs argue that taken as a whole, these allegations are sufficient to state a claim for breach of the duty of imprudence. *Id.* at 13. The Court is mindful that in the context of an imprudence claim the complaint should be read as a whole. *See Braden*, 588 F.3d at 594 (noting that the complaint should be read as a whole to evaluate an imprudence claim). In order to determine whether Plaintiffs have stated a claim for breach of the duty of prudence, the Court therefore considers Plaintiffs' allegations and Defendants' arguments as a whole.

### a. Relative Performance of the Intel Funds

In support of their claim for breach of the duty of prudence, Plaintiffs first allege that the "Intel TDFs had substantially worse performance" than "both actively-managed and passively-managed target-date series offered by professional asset managers . . . both in absolute terms and on a risk-adjusted basis." Compl. at ¶ 12. Plaintiffs further allege that "[t]he actively-managed [Intel] GDFs have consistently underperformed both actively-managed and passively-managed investment alternatives that were significantly less expensive, both in absolute terms and on a risk-

14

adjusted basis." *Id.*  The Investment Committee's failure to investigate and consider better-performing investment options, Plaintiffs contend, constitutes a breach of the duty of prudence. Opp. at 12.

Defendants argue, and Plaintiffs do not deny, that allegations of poor performance, standing alone, are insufficient to state a claim for breach of the duty of prudence.  Mot. at 13.  This is because the Court's obligation under ERISA is not to evaluate whether a defendant's investment turned out to be wise in hindsight, but rather "whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *Donovan*, 716 F.2d at 1232.  As such, the prudence standard "focus[es] on a fiduciary's conduct in arriving at an investment decision, not on its results, and ask[s] whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *St. Vincent*, 712 F.3d at 716.

However, citing *Braden* and *Cryer v. Franklin Templeton Resources*, Plaintiffs argue that allegations of poor performance, combined with allegations of higher-than-average fees and self-dealing by plan fiduciaries, are sufficient to state a claim for breach of the duty of prudence.  Opp. at 14; *Braden*, 588 F.3d at 589; *Cryer v. Franklin Templeton Resources*, 2017 WL 818788, *4 (N.D. Cal. Jan. 17, 2017).  In support of Plaintiffs' allegations of poor performance, Plaintiffs provide several comparisons between the performance of the Intel Funds and other allegedly comparable funds.  For example, Plaintiffs allege that "as of the end of 2018, Intel Target Date 2015, 2020, 2030, 2025, 2035, 2040, and 2045 Funds in the 401(k) Savings Plan generally underperformed comparable alternatives such as those offered by Vanguard in each calendar year between 2011 and 2018, and consistently yielded significantly lower average returns for that same time period." *Id.* at ¶ 147.  Plaintiffs similarly allege that the Intel TDFs, as of December 31, 2016, "underperformed comparable alternatives by Vanguard, American Funds and T. Rowe Price over available five- and ten-year horizons." *Id.* at ¶ 149.  Plaintiffs also allege that, as of the year-end of 2018, the "Intel 2015 TDF earned 6.62% compared to the average mutual fund which

Case No. 19-CV-04618-LHK
ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS COUNTS I-VI OF PLAINTIFFS' CONSOLIDATED COMPLANT

earned 7.60%." *Id.* at ¶ 153. Plaintiffs allege that the Intel GDFs have also "underperformed peer balanced funds," such as the Vanguard Balanced Fund and the LifeStrategy Moderate Growth Fund. *Id.* at ¶ 159.

The deficiency with these allegations is that although Plaintiffs allege comparisons of the Intel Funds' performance to "peer" and "comparable" funds, Plaintiffs have failed to provide sufficient allegations to support their claim that these other funds are adequate benchmarks against which to compare the Intel Funds. *See* Mot. at 12–14. Where a plaintiff claims that "a prudent fiduciary in like circumstances would have selected a different fund based on the cost or performance of the selected fund, [plaintiff] must provide a sound basis for comparison—a meaningful benchmark." *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 833 (8th Cir. 2018). However, simply labeling funds as "comparable" or "a peer" is insufficient to establish that those funds are meaningful benchmarks against which to compare the performance of the Intel Funds. Plaintiffs' complaint contains no other factual allegations to support a finding that the funds that Plaintiffs identify therein provide a "meaningful benchmark" against which to evaluate the performance of the Intel Funds. *See Davis v. Salesforce.com*, 2020 WL 5893405, at *4 (N.D. Cal. Oct. 5, 2020) (dismissing claim for breach of the duty of prudence in part because Plaintiffs failed to plead sufficient facts to establish that allegedly comparable funds were a meaningful benchmark). Absent such allegations, Plaintiffs' allegations regarding poor performance are insufficient to state a claim for breach of the duty of prudence, even in conjunction with further allegations of higher-than-average fees and self-dealing.

### b. Excessive Fees

Next, Plaintiffs allege that the fees charged for investing in the Intel TDFs and the Intel GDFs have been significantly higher than those charged by funds with comparable investment styles and similar or better performance. *Id.* at ¶ 136. For example, Plaintiffs allege that "[i]n 2014, the 12 Intel TDFs in the 401(k) Savings Plan had expense ratios between 1.07 and 1.09%, which exceeded the category average of 0.46% by more than 130%." *Id.* at ¶ 136. In the same

Case No. 19-CV-04618-LHK
ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS COUNTS I-VI OF
PLAINTIFFS' CONSOLIDATED COMPLANT

United States District Court
Northern District of California

year, "[t]he Intel GDFs had an expense ratio of 1.25%, which exceeded the category average of 0.33% for non-target date balanced funds by more than 270%." *Id.* Plaintiffs further allege that in 2015, the Intel TDFs in the Intel 401(k) Savings Plan charged fees that were between 74% and 940% higher than comparable actively-managed and passively-managed investment alternatives. *Id.* at ¶ 139. Plaintiffs provide numerous other fee comparisons, which Plaintiffs allege demonstrate that the Intel Funds consistently incurred significantly higher fees than comparable investment alternatives. *See id.* at ¶¶ 133–146. In light of these allegations, Plaintiffs conclude that "[t]he conduct of the Investment Committee Defendants demonstrates that they failed to perform a proper investigation of the availability of lower-cost target date funds and balanced funds." *Id.* at ¶ 164. Moreover, Plaintiffs allege that "[b]y selecting and maintaining the Intel Date Funds and the 401K Global Diversified Fund in the 401(k) Savings Plan and designating the Intel Target Date Funds as the default investment options of the 401(k) Saving Plan, the Investment Committee Defendants caused the Plan and many of its participants to pay millions of dollars in excess fees per year." *Id.* at ¶ 165.

On its own, the Investment Committee's failure to select the investment with the lowest fees is not sufficient to plausibly state a claim for breach of the duty of prudence. As the Seventh Circuit has explained, "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009). Thus, "[i]t is inappropriate to compare distinct investment vehicles solely by cost, since their essential features differ so significantly." *White v. Chevron Corp.* ("*White I*"), 2016 WL 4502808, at *12 (N.D. Cal. Aug. 29, 2016).

Defendants argue that there are two further deficiencies in Plaintiffs' allegations regarding fees incurred by the Intel Funds. First, Defendants argue that the fees alleged fall within the expense ratios characterized as unexceptional by the Ninth Circuit in *Tibble v. Edison International*. 729 F.3d 1110, 1135 (9th Cir. 2013), *vacated on other grounds*, 575 U.S. 523 (2015). However, *Tibble* does not stand for such a hard-and-fast rule with respect to the prudence

17

United States District Court
Northern District of California

1    of particular fees.  Rather, the Ninth Circuit warned in *Tibble* that courts should not take a bright-

2    line approach to evaluating whether particular fees are prudent.  *Id.*  Thus, the fees challenged in

3    this case must be evaluated against comparable investments, not the fee range at issue in *Tibble*.

4         Second, Defendants argue that the funds against which Plaintiffs compare the Intel Funds

5    with respect to fees are not meaningful benchmarks against which to compare the costs incurred

6    by the Intel Funds.  Mot. at 18.  The Court agrees with Defendants that Plaintiffs cannot "dodge

7    the requirement for a meaningful benchmark by merely finding a less expensive alternative fund

8    or two with some similarity."  *Meiners*, 898 F.3d at 823.  Moreover, the central deficiency with

9    Plaintiffs' allegations regarding excess fees is that Plaintiffs have again failed to adequately plead

10   factual allegations to support their claim that Plaintiffs have provided a meaningful benchmark

11   against which to compare the fees incurred by the Intel Funds.  Where plaintiffs claim that "a

12   prudent fiduciary in like circumstances would have selected a different fund based on the cost or

13   performance of the selected fund, [plaintiffs] must provide a sound basis for comparison—a

14   meaningful benchmark."  *Id.* at 822 (internal quotation marks omitted).  Just as Plaintiffs fail to

15   provide sufficient allegations to support their claim that the Intel Funds underperformed

16   comparable funds, here too Plaintiffs have failed to substantiate their allegation that the funds

17   Plaintiffs offer in comparison to the Intel Funds provide a meaningful benchmark.

18        Instead, Plaintiffs merely refer to the funds as "comparable" or "similar."  *See* Compl. at ¶¶

19   136, 139, 140, 147.  Without factual allegations to support Plaintiffs' claim that the complaint

20   compares fees incurred by the Intel Funds with a meaningful benchmark, the Court cannot discern

21   whether Plaintiffs are comparing funds that have different "aims, different risks, and different

22   potential rewards that cater to different investors."  *Davis v. Wash. Univ.*, 960 F.3d 478, 485 (8th

23   Cir. 2020).  Absent such allegations, Plaintiffs' allegations regarding excessive fees are

24   insufficient to state a claim for breach of the duty of prudence, even in conjunction with further

25   allegations of poor performance and self-dealing by the Investment Committee.  *See id.* at 484–85

26   (affirming dismissal of claim for breach of the duty of prudence and noting that "[c]omparing

27

28   Case No. 19-CV-04618-LHK
     ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS COUNTS I-VI OF
     PLAINTIFFS' CONSOLIDATED COMPLANT

18

1    apples and oranges is not a way to show that one is better or worse than the other").

2         c.   **Deviation from Prevailing Allocation Standards**

3         Plaintiffs next allege that the Investment Committee's imprudence is demonstrated by the

4    fact that the Intel Funds' allocation models "drastically departed from prevailing standards of

5    professional asset managers." *Id.* at ¶ 13.  Plaintiffs state that "[b]y overweighting allocations of

6    the Plans' assets to the speculative asset classes represented by the Non-Traditional Investments

7    Accounts, the allocation model for the Intel TDFs deviates and has deviated drastically from

8    prevailing professional asset manager standards for target date funds available in the market." *Id.*

9    at ¶ 180.  Plaintiffs allege that the Intel GDFs similarly deviated from the typical allocation of peer

10   balanced funds by allocating a substantial percentage of the GDFs' assets to Non-Traditional

11   Investments. *Id.* at ¶ 190.  Some of Plaintiffs' factual allegations in support of these claims lack

12   merit.  For example, Plaintiffs compare the average asset allocations for 2030 target date funds

13   offered by other major fund companies as of 2009 to the Intel 2030 TDF's asset allocation in

14   2014. *Id.* at ¶¶ 181–82.  The asset allocation of average target date funds in 2009 does not

15   represent a meaningful benchmark against which to evaluate the prevailing professional standards

16   of asset allocation in 2014.  However, Plaintiffs do allege more direct comparisons, including that

17   although the Intel 2030 Target Date Fund allocated 16% of its assets to hedge funds as of 2015,

18   eight allegedly comparable 2030 target date funds did not allocate any assets to hedge funds as of

19   2015. *Id.* at ¶ 180.  Plaintiffs allege a similar comparison between Intel's 2035 TDF, as of 2017,

20   and three allegedly peer 2035 funds. *Id.* at ¶ 186.  Finally, Plaintiffs allege that the Intel GDFs

21   consistently allocate more than 50% of their assets to Non-Traditional Investments, whereas two

22   comparable funds do not allocate any of their assets to hedge funds or private equity. *Id.* at ¶ 190.

23        Standing alone, these comparisons fail to state a claim for breach of the duty of prudence.

24   As Defendants rightfully point out, and Plaintiffs do not contest, ERISA requires that fiduciaries

25   act prudently, but it does not require that fiduciaries mimic the industry standard when making

26   investments.  Mot. at 11; *see also Barchock v. CVS Health Corp.*, 886 F.3d 43, 55 (1st Cir. 2018)

27
                                                    19

28   Case No. 19-CV-04618-LHK
     ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS COUNTS I-VI OF
     PLAINTIFFS' CONSOLIDATED COMPLANT

United States District Court
Northern District of California

(affirming dismissal of breach of fiduciary duty claim alleging deviation from the industry

standard).  Plaintiffs do not cite a single case to support the proposition that the deviation they

highlight states a claim for breach of the duty of prudence.  *See* Opp. at 5–6.  The Court cannot

find any such case.  The Court therefore finds that Plaintiffs' allegations regarding the Intel Funds'

deviation from industry allocation standards do not state a claim on their own for breach of the

duty of prudence by the Investment Committee.

### d.  Contemporary Evidence of Risk with Non-Traditional Investments

Plaintiffs next argue that risks with hedge funds and private equity investments were

known when the Investment Committee began to invest in Non-Traditional Investments in 2011.

Opp. at 7; Compl. at ¶ 191.  Plaintiffs therefore argue that a prudent fiduciary in 2011, had that

fiduciary properly investigated the risks of investing in hedge funds and private equity funds,

would have known that those investments do not provide the downside protection that Defendants

argue made them a prudent investment.  Moreover, Plaintiffs allege that, even as of 2011, a

prudent fiduciary would have been aware that (1) it is difficult to value hedge fund assets; (2)

there are investment risks with hedge funds because they are not subject to strict leverage limits;

(3) hedge funds suffer from a lack of liquidity; (4) hedge funds charge high fees; (5) hedge funds

have a lack of transparency compared with other assets, and (6) hedge funds exhibit high

operational risks.  Compl. at ¶¶ 212–36.  Finally, Plaintiffs allege that a prudent fiduciary in 2011

would have been aware that private equity funds also suffer from high fees and that valuation of

private equity investments can be difficult.  *Id.* at ¶¶ 241–46.  Plaintiffs argue that information

demonstrating the downsides to hedge funds and private equity funds was known in 2011, and it

was therefore imprudent for the Investment Committee to invest in these assets beginning in 2011.

Opp. at 7.

However, although Plaintiffs argue that "hedge funds and private equity pose greater

'investor and valuation risks and lack transparency and liquidity,'" and that "[t]hese problems with

hedge fund and private equity investments were knowable before 2011," many of the sources that

20

United States District Court
Northern District of California

Plaintiffs cite to support these claims were not available in 2011.  Opp. at 13 (quoting Compl. at ¶ 191).  For example, Plaintiffs cite a myriad of sources that Plaintiffs argue demonstrate the risks associated with hedge funds and private equity funds, most of which were published between 2012 and 2014.  Compl. at ¶¶ 220–42.  Materials published after 2011 do not support Plaintiffs' claim that a prudent fiduciary in 2011 had access to information that demonstrated the risks associated with investing in hedge funds and private equity.

Instead, Plaintiffs' claim rests heavily on a 2011 report titled "Plans Face Challenges When Investing in Hedge Funds and Private Equity," along with a few other contemporary sources.  *See, e.g., id.* at ¶¶ 204, 214.  Even accepting as true Plaintiffs' allegation that this report contained evidence that hedge funds and private equity funds carried the risks that Plaintiffs allege, this fact alone is insufficient to support Plaintiffs' claim that it was imprudent for the Investment Committee to invest in hedge funds and private equity beginning in 2011.  Plaintiffs have failed to identify any case to support their allegation that the small sample of information allegedly available in 2011 was sufficient to render imprudent the Investment Committee's decision to allocate assets to Non-Traditional Investments.  The Court therefore finds that although Plaintiffs have plausibly alleged that there was some evidence available in 2011 that hedge funds and private equity funds carried risks and that a prudent fiduciary could have found that evidence, that small body of evidence is insufficient on its own to support a claim for breach of the duty of prudence by the Investment Committee.

### e.  Evidence of Self-Interested Conduct by the Investment Committee

Finally, Plaintiffs allege that "the Non-Traditional Investments were selected and maintained 'in a manner that prioritized the interest of Intel Capital and Intel over those of the participants in the Plans and benefited Intel Capital.'"  Opp. at 13 (quoting Compl. at ¶ 258).  Plaintiffs argue that this alleged conflict of interest supports Plaintiffs' claim for breach of the duty of prudence by the Investment Committee.  The Court agrees with Plaintiffs that several courts have found that plausible allegations of self-dealing or conflicts of interest, combined with

21

United States District Court
Northern District of California

plausible allegations of higher-than-average fees and poor performance suffered by investments, are sufficient to state a claim for breach of the duty of prudence under ERISA.  *See, e.g.*, *Braden*, 588 F.3d at 596 (holding that plaintiff stated a claim for breach of fiduciary duty where plaintiff alleged that the funds chosen by trustee charged higher fees than available alternatives and underperformed, and that funds were included in the plan because they would benefit the plan's trustees); *Lorenz v. Safeway, Inc.*, 241 F. Supp. 3d 1005, 1023 (N.D. Cal. March 13, 2017) (plaintiffs stated a claim where they plausibly alleged that investments chosen by fund fiduciaries charged higher fees than comparable alternatives, had no record of performance, and there were plausible allegations that defendants entered into a revenue-sharing agreement with the plan's record-keepers); and *Cryer*, 2017 WL 818788, at *4 (plaintiffs stated a claim for breach of fiduciary duty where they alleged plan fiduciaries invested in higher-cost, lower-performing investments, and that investment decisions were made in order to allow defendant to collect excessive administrative and investment fees).  Here, however, Plaintiffs have failed to allege plausible allegations of a conflict of interest or self-dealing sufficient to state a claim for breach of the duty of prudence.

Plaintiffs allege that Intel Capital, Intel's venture capital division and an Intel subsidiary, partners with investment companies to invest in startups in a variety of sectors.  Compl. at ¶ 53, 256.  Plaintiffs further allege that the Intel Funds invest in private equity funds established by some of the investment companies that invest in the same startups as Intel Capital.  *Id.* at ¶ 255. Two Investment Committee Defendants, Arvind Sodhani and Ravi Jacob, also served in management roles at Intel Capital.  *Id.* at ¶ 258.  On the basis of these allegations, Plaintiffs allege that by investing in private equity funds "provided by investment companies that Intel Capital partnered with, the Investment Committee . . . helped Intel Capital develop and maintain a profitable network of investment companies that could provide Intel Capital and Intel with access to new technology startups."  *Id.* at ¶ 258.  According to Plaintiffs, this "prioritized the interest of Intel Capital and Intel over those of the participants in the Plans" in violation of the Investment

22

United States District Court
Northern District of California

1  Committee's fiduciary duty to the plan participants.  *Id.*

2       Defendants argue, and the Court agrees, that even considering these allegations in the light

3  most favorable to the non-moving party, Plaintiffs have provided little more than conclusory

4  allegations devoid of even minimal factual support.  Importantly, Plaintiffs provide no factual

5  allegations to support the claim that the aim of the Investment Committee's investment in the

6  various private equity funds was to aid Intel Capital in its venture capital investments.  The mere

7  fact that Intel Capital invested in a tiny percentage of the same companies that also received

8  investments from private equity funds that the Intel Funds invested in is not sufficient to plausibly

9  allege a real conflict of interest, rather than the mere potential for a conflict of interest.  *See Kopp*

10  *v. Klein*, 894 F.3d 214, 222 (5th Cir. 2018) (per curiam) (explaining that the "potential for a

11  conflict, without more, is not synonymous with a plausible claim of fiduciary disloyalty").  As

12  such, the Court finds that Plaintiffs have failed to provide plausible allegations that the Investment

13  Committee engaged in self-dealing, or that the Intel Funds' investments in Non-Traditional

14  Investments suffered from a conflict of interest.

15       Taken together, the Court can now determine whether Plaintiffs' complaint, when read as a

16  whole, plausibly alleges that the Investment Committee acted imprudently by selecting and

17  maintaining the Intel Funds' investment in Non-Traditional Investments such as hedge funds and

18  private equity funds.  The Court agrees with Plaintiffs that plausible allegations that the Intel

19  Funds suffered from higher-than-average fees and poor performance, combined with plausible

20  allegations of self-dealing by the Investment Committee, may be sufficient to state a claim for

21  breach of the duty of prudence.  Opp. at 17.  However, Plaintiffs have failed to plausibly allege

22  facts sufficient to state a claim under that standard.  First, Plaintiffs have failed to allege sufficient

23  facts to support their allegation that the Intel Funds suffered from higher-than-average fees and

24  poor performance compared with peer funds.  In order to plausible allege this comparison,

25  Plaintiffs must provide a meaningful benchmark against which to compare the Intel Funds.

26  Plaintiffs have failed to allege facts that would demonstrate that their chosen "comparable" funds

27

28
Case No. 19-CV-04618-LHK
ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS COUNTS I-VI OF
PLAINTIFFS' CONSOLIDATED COMPLANT

are a meaningful benchmark.  Second, Plaintiffs have failed to allege sufficient facts to plausibly allege that the Investment Committee engaged in self-dealing or suffered from a conflict of interest when it invested in Non-Traditional Investments.  Taken together, the Court finds that Plaintiffs have failed to state a claim for breach of the duty of prudence by the Investment Committee.

### 2.   Breach of the Duty of Loyalty

Plaintiffs next allege that the Investment Committee breached its duty of loyalty under ERISA.  Compl. at ¶¶ 319–40; Opp. at 20.  ERISA requires that plan fiduciaries act "solely in the interest of the participants and beneficiaries," and "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries."  *Id.* § 1104(a)(1)(A).  As such, plan fiduciaries must act "with an eye single to the interests of the participants and fiduciaries."  *White I*, 2016 WL 4502808, at *4 (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2nd Cir. 1982)).

Plaintiffs allege that the Investment Committee breached its duty of loyalty in two ways: (1) by improperly favoring investments that benefited Intel Capital and Intel at the expense of the plan participants; and (2) by failing to sufficiently monitor the performance and fees of the Intel Funds, and to evaluate lower-cost funds where available.  Opp. at 20.  Defendants in turn argue first that Plaintiffs have failed to plead any allegations that support their claim that investment decisions were made to benefit Intel Capital and Intel at the expense of the plan participants.  Mot. at 21.  Second, Defendants argue that Plaintiffs' prudence-based allegations regarding excessive fees cannot state a claim for breach of the duty of loyalty.  Reply at 14.

First, with respect to Plaintiffs' allegations regarding a conflict of interest between the Investment Committee and plan participants, the Court agrees with Defendants that Plaintiffs have failed to plead an adequate claim.  Defendants argue, and the Court agrees, that even considering the alleged facts in the light most favorable to the non-moving party, Plaintiffs have provided little more than conclusory allegations devoid of even minimal factual support.  Mot. at 20.  As the Court has already discussed, Plaintiffs provide no specific factual allegations to support their

24

claim that the purpose of the Investment Committee's investment in various private equity funds was to somehow aid Intel Capital in its venture capital investments. The mere fact that Intel Capital invested in a small percentage of the same companies that also received investments from private equity funds in which the Intel Funds invested is not sufficient to state a claim for breach of the duty of loyalty under ERISA § 404(a). The facts alleged support at most the potential for a conflict of interest. *See Kopp*, 894 F.3d at 222 (noting that the "potential for a conflict, without more, is not synonymous with a plausible claim of fiduciary disloyalty"). As such, the Court finds that Plaintiffs have failed to state a claim for breach of the duty of loyalty as a result of the Investment Committee's investment in private equity funds.

Plaintiffs next argue that the Investment Committee breached their duty of loyalty by failing to sufficiently monitor the performance and fees of the Intel Funds, and by allocating the assets of the Intel Funds into high-fee, low-performance Non-Traditional Investments. Opp. at 20. These allegations are essentially identical to Plaintiffs' allegations of imprudence, discussed above, which have now been repackaged as a breach of the duty of loyalty. Defendants argue that Plaintiffs have provided only allegations of imprudence, which is a distinct breach of fiduciary duty under ERISA. Reply at 14. The Court agrees. *See White II*, 2017 WL 2352137, at *6–9 (noting that ERISA § 404(a) distinguishes the duty of loyalty from the duty of prudence, and noting that plaintiffs' allegations regarding high fees were allegations of imprudence, not disloyalty); *Romero v. Nokia, Inc.*, 2013 WL 5692324, at *5 (N.D. Cal. Oct. 15, 2013) (dismissing claim for breach of the duty of loyalty where it hinged entirely on prudence-based allegations). Missing from Plaintiffs' allegations regarding the Investment Committee's decision to invest in allegedly high-fee, low-performance assets is any allegation of a conflict of interest or self-dealing on the part of the Investment Committee. *See Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1069 (N.D. Cal. 2017) (noting that the duty of loyalty prevents fiduciaries from "engaging in transactions that involve self-dealing or that otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests") (quoting Restatement (Third) of Trusts § 78

Case No. 19-CV-04618-LHK
ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS COUNTS I-VI OF PLAINTIFFS' CONSOLIDATED COMPLANT

1    (2007)).

2         The two cases that Plaintiffs offer in support of their argument only confirm this principle.

3    *See John v. Fujitsu Tech. & Bus. of Am., Inc.*, 250 F. Supp. 3d 460, 463 (N.D. Cal. 2017) (finding

4    a cognizable breach of the duties of prudence and loyalty where plan expenses were not only three

5    times higher than average for similarly sized plans, but plan sponsor also "approved substantial

6    payments over $100,000 per year to itself for overseeing the plan"); *John v. Providence Health &*

7    *Servs.*, 2018 WL 1427421, at *8-9 (W.D. Wash. March 22, 2018) (finding that plaintiffs had

8    provided sufficient allegations that defendants made investment management decisions to benefit

9    the plan sponsor at the expense of the plan participants).  Plaintiffs' allegations that the Investment

10   Committee invested in high-fee, low-performance investments are devoid of plausible allegations

11   that could show a conflict of interest or self-dealing, and as such, Plaintiffs' allegations fail to state

12   a claim for a breach of the duty of loyalty under ERISA § 404(a).

13        The Court therefore finds that Plaintiffs have failed to state a claim for breach of fiduciary

14   duty under ERISA § 404(a).

15   **B.  Counts III and V: Breach of the Duty of Prudence by the Administrative Committee**

16        Defendants next argue that Plaintiffs lack Article III standing to bring Counts III and V.[7]

17   Mot. at 24.  In Count III, Plaintiffs allege that the Administrative Committee violated ERISA §§

18   404(a)(1)(A) and 404(a)(1)(B) by failing to make adequate and accurate disclosures to Plaintiffs

19   regarding the Intel Plans.  Compl. at ¶¶ 341–53.  Specifically, Plaintiffs allege that the

20   Administrative Committee "failed to adequately disclose to participants and beneficiaries in the

21   Plans information regarding risks, fees, and expenses associated with such hedge funds and private

22   equity funds," and failed to disclose "the identity of the private equity and hedge fund firms and

23   individual managers."  *Id.* at ¶ 352.  In Count V, Plaintiffs allege that the Administrative

24   Committee violated ERISA § 102(a) and 29 U.S.C. § 1022(a) by failing to prepare Summary Plan

25

26   ───────────────

27   [7] Because the Court finds that Plaintiffs lack Article III standing to brings Counts III and V, the
     Court does not reach the issue of claim and issue preclusion.  *See* Mot. at 24.

28   Case No. 19-CV-04618-LHK
     ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS COUNTS I-VI OF
     PLAINTIFFS' CONSOLIDATED COMPLANT

1   Descriptions ("SPDs") that adequately disclosed and explained the risks associated with the Intel

2   Funds' investments in hedge funds and private equity. *Id.* at ¶ 366.

3       Defendants argue that Plaintiffs lack Article III standing to bring Counts III and V because

4   Plaintiffs have failed to allege an injury-in-fact that is traceable to the conduct complained of by

5   Plaintiffs. Mot. at 23. Specifically, Defendants argue that "Plaintiffs do not claim to have read

6   any of the allegedly defective documents at the time they were issued, much less to have relied on

7   those documents and been injured as a result." *Id.* In response, Plaintiffs argue that because

8   Plaintiffs seek "purely equitable relief," under Ninth Circuit law the Administrative Committee

9   can be held "culpable . . . even in the absence of actual injury to a plan or participant." Opp. at 22

10  (quoting *Ziegler v. Conn. Gen. Life Ins. Co.*, 916 F.2d 548, 551 (9th Cir. 1990)). Furthermore,

11  Plaintiffs argue that even if Plaintiffs must show an actual injury or harm, the complaint alleges

12  that Plaintiffs "suffered financial losses through the loss of returns" and Plaintiffs "have foregone

13  opportunities to make alternative uses of their retirement savings." Opp. at 23 (quoting Compl. at

14  ¶¶ 353, 367).

15      The Court finds that Plaintiffs' arguments lack merit. First, Plaintiffs cite *Ziegler* and

16  *Berman v. Microchip Tech. Inc.* for the proposition that ERISA provides statutory standing for

17  certain violations, even absent an alleged injury traceable to the ERISA violation. *See Ziegler*,

18  916 F.2d at 551 (noting that some "plaintiffs need not allege actual injuries to prosecute certain

19  ERISA violations"); *Berman v. Microchip Tech. Inc.*, 2018 WL 732667, at *10 (N.D. Cal. Feb. 6,

20  2018) (noting that in certain instances, an ERISA plaintiff may "bring a claim for breach of

21  fiduciary duty, even when there is no allegation of loss"). As Defendants point out, however, the

22  United States Supreme Court's recent decision in *Thole v. U.S. Bank N.A.* clarified that statutory

23  standing under ERISA does not absolve a plaintiff of the requirement to demonstrate Article III

24  standing. *See* 140 S. Ct. 1615, 1620 (2020) (holding that an available cause of action under

25  ERISA does not affect the Court's Article III standing analysis). Although *Thole* concerned a

26  defined-benefit plan governed by ERISA, rather than the defined-contribution plan at issue in the

27

28

Case No. 19-CV-04618-LHK
ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS COUNTS I-VI OF
PLAINTIFFS' CONSOLIDATED COMPLANT

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    instant case, the Supreme Court made clear that plaintiffs who bring claims under ERISA must

2    satisfy Article III standing.  *Id.*  The Supreme Court also addressed the argument that Plaintiffs

3    make here, and explained that "[t]his Court has rejected the argument that 'a plaintiff

4    automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory

5    right and purports to authorize that person to sue to vindicate that right.'"  *Id.* at 1620 (quoting

6    *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)).  The Supreme Court explained that

7    although plaintiffs argued that ERISA provided plan participants with a general cause of action to

8    sue for equitable relief, that "cause of action does not affect the Article III standing analysis."  *Id.*

9    Plaintiffs in the instant case advance essentially the same argument that the Supreme Court

10   rejected in *Thole*.  Plaintiffs argue that they do not need to allege an actual injury because they

11   seek "purely equitable relief" under ERISA.  *Thole* clarifies that Plaintiffs must still meet Article

12   III's standing requirement.

13          Plaintiffs next argue that even if they must allege an injury-in-fact to bring their claims

14   under Counts III and V, Plaintiffs have met that burden because they allege that as a result of

15   Defendants' failure to provide accurate and complete information in the plan disclosures, Plaintiffs

16   "suffered financial losses through the loss of returns," and Plaintiffs "have foregone opportunities

17   to make alternative uses of their retirement savings."  Opp. at 23 (quoting Compl. at ¶¶ 353, 367).

18   However, these allegations are insufficient to plausibly allege an injury-in-fact that is traceable to

19   Defendants' conduct because Plaintiffs do not allege that Plaintiffs read any of the allegedly

20   defective documents or relied upon those documents.  Absent allegations that Plaintiffs read or

21   relied upon the allegedly defective documents, Plaintiffs have failed to allege an injury-in-fact that

22   is traceable to Defendants' conduct, and therefore Plaintiffs lack Article III standing to bring

23   Counts III and V.

24          **C.  Counts IV and VI: Failure to Monitor and Co-Fiduciary Liability**

25          Defendants next argue that Plaintiffs' derivative claims necessarily fail because Plaintiffs

26   have not plausibly alleged a primary violation of ERISA.  Mot. at 28–29.  The Court agrees.

27                                                        28

28   Case No. 19-CV-04618-LHK
     ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS COUNTS I-VI OF
     PLAINTIFFS' CONSOLIDATED COMPLANT

United States District Court
Northern District of California

Plaintiffs allege two derivative claims.  First, Plaintiffs allege in Count IV that the Intel Finance Committee and the Intel Chief Financial Officers, who are tasked with appointing and monitoring the members of the Investment Committee and the Administrative Committee, breached their fiduciary duty under ERISA § 404(a) by failing to monitor those appointees and failing to remove them.  Compl. at ¶¶ 354–62.  Second, in Count VI, Plaintiffs allege that all 21 Defendants are subject to "co-fiduciary liability" under ERISA § 405 for the violations of each Defendant as to Counts I, II, III, and V.  *Id.* at ¶¶ 368–84.  Both derivative claims fail because Plaintiffs have failed to state an underlying ERISA violation.  As such, Plaintiffs have failed to state a claim for failure to monitor and co-fiduciary liability.  *See, e.g., In re HP ERISA Litig.*, 2014 WL 1339645, at *8 (N.D. Cal. April 2, 2014) (dismissing claims for failure to monitor and knowing participation in co-fiduciaries' breaches of duty because these claims were derivative of the claims for breach of the duties of prudence and disclosure); *Romero*, 2013 WL 5692324, at *5 (co-fiduciary claims "necessarily depend[] on at least one underlying breach").

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Counts I–VI of Plaintiffs' consolidated complaint is GRANTED.  Because granting Plaintiffs an opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice Defendants, and Plaintiffs have not acted in bad faith, the Court grants leave to amend.  *See Leadsinger v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (explaining standard for granting leave to amend).

Should Plaintiffs choose to file an amended complaint, they must do so within 30 days of this Order.  Failure to do so, or failure to cure the deficiencies identified in this Order and in Defendants' motion to dismiss, will result in dismissal of Plaintiffs' deficient claims with prejudice.  Plaintiffs may not add new claims or parties without a stipulation or leave of the Court.  If Plaintiffs choose to file an amended complaint, Plaintiffs must also file a redlined version of the amended complaint identifying the amendments.

**IT IS SO ORDERED.**

29

Case No. 19-CV-04618-LHK
ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS COUNTS I-VI OF
PLAINTIFFS' CONSOLIDATED COMPLANT

1   Dated: January 21, 2021

2

3                                      LUCY H. KOH
United States District Judge

United States District Court
Northern District of California

Case No. 19-CV-04618-LHK
ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS COUNTS I-VI OF
PLAINTIFFS' CONSOLIDATED COMPLANT